UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MITCHELL P. HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-01919-JPH-KMB |
| | ) |
| RICHARD GASKINS, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER ACTION**

Plaintiff Mitchell Hall alleges that Defendant Richard Gaskins violated the Eighth Amendment by leaving him in a segregation cell that was covered in vomit, urine, and feces for three days, during which time he had no mattress, medication, or hygiene supplies. Dkt. 15 (Screening Order). Officer Gaskins moves for summary judgment, arguing that Mr. Hall failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit and submitted falsified documents to the Court to make it seem like he had properly exhausted. Dkt. 36. Because resolving Officer Gaskins's motion requires the Court to make credibility findings, the Court cannot resolve the merits of his defense without a hearing. As a result, his summary judgment motion, dkt. 36, is **DENIED**. However, because Officer Gaskins has submitted evidence that Mr. Hall submitted falsified documents, the Court warns Mr. Hall of potential sanctions.

# I.
# Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ.

2

P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

At all relevant times, Mr. Hall was incarcerated at Plainfield Correctional Facility ("Plainfield"), a prison within the Indiana Department of Correction ("IDOC").

### A. Grievance Process

The IDOC has a standardized grievance process which was in place during the time Mr. Hall alleges his rights were violated. Dkt. 36-1 ¶¶ 3, 6–8; dkt. 36-2. The grievance process consists of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. Dkt. 36-2 at 3. Successful exhaustion of the grievance process requires timely completion of each step. Dkt. 36-1 ¶ 13.

At the first step, an inmate must file a grievance by submitting a completed State Form 45471 to the prison Grievance Specialist no later than 10 business days from the date of the incident giving rise to the complaint or concern. Dkt. 36-2 at 9. The Grievance Specialist then has 10 business days to accept and record the grievance or to reject it. *Id.* at 9–10. If an inmate does not receive either a receipt for an accepted grievance or a rejected form from the Grievance Specialist within 10 business days of submitting it, the inmate

3

must "notify the Offender Grievance Specialist of that fact (retaining a copy of the notice) and the Offender Grievance Specialist shall investigate the matter and respond to the offender's notification within ten (10) business days." *Id.* at 9.

The section of the grievance policy titled "Screening the Grievance" sets forth the procedure for rejecting a grievance without recording it. *Id.* at 10. Under that section, if a grievance is rejected, the Grievance Specialist must use State Form 45475, "Return of Grievance," to communicate that decision to the inmate. *Id.* at 10. The inmate then has 5 business days to make the necessary revisions to the grievance form and return the revised form to the Grievance Specialist. *Id.*

The section of the grievance policy titled "Response to Grievance" governs the grievance specialist's steps when a grievance is accepted and recorded. *Id.* at 10–11. If the grievance is accepted, the Grievance Specialist has 15 business days to investigate the grievance and provide a response, although that time can be extended by the Warden/designee with notice provided to the inmate of the length of the extension. *Id.* at 10–12. Then, "[i]f the offender receives no grievance response within twenty (20) business days of the Offender Grievance Specialist's receipt of the grievance, the offender may appeal as though the grievance had been denied," unless the time to respond had been extended. *Id.* at 12. The time to appeal then "begins on the twenty-first (21st) business day after the grievance was recorded or at the end of extension approved by the Warden/designee." *Id.*

4

Once the Grievance Specialist provides the grievance response to the inmate or the time to run expires, the inmate has 5 business days to file a first-level appeal. *Id.* at 12.

### B. Mr. Hall's Participation in Grievance Process

Mr. Hall was placed in segregation on August 10, 2023, and remained there for three days. Dkt. 1 at 3 (verified complaint). Mr. Hall filed his complaint on October 25, 2023. *See Id.* The parties agree that Mr. Hall did not exhaust the grievance process for the claims in his complaint, but they dispute whether the process was available to Mr. Hall.

#### 1. Mr. Hall's Evidence

After Officer Gaskins raised an exhaustion defense in his answer but before he moved for summary judgment, Mr. Hall filed a response to the defense. Dkt. 29. Mr. Hall stated under penalty of perjury that after he was released from segregation, he filed several grievances with Grievance Specialists Kyle Foster and Jeremy Jones about "the issues that needed addressed." *Id.* at 1. One grievance was returned to Mr. Hall with a signature and date on it, but it had not been assigned a grievance number and was not resolved. *Id.* Mr. Jones told Mr. Hall that "the grievance office is so far behind and the facility will never be able to catch up the amount of grievances filed," so Mr. Jones was turning the job over to Mr. Foster and "wished him luck on the matter." *Id.* at 2. Mr. Hall spoke to Plainfield's warden, two correctional officers, and Mr. Foster and Mr. Jones to try to get a resolution. *Id.*

5

With this response, Mr. Hall enclosed two grievance documents that he stated under penalty of perjury are included in "the way that they were returned to me." *Id.* at 1. The first is a grievance form, with no grievance number, dated "8/24/2024" with an incident date of "8/14/2023":



Dkt. 29-2 at 1. At the bottom of the grievance is a signature appearing to read "J J" in the box labeled Signature of Facility Grievance Specialist, and the date box next to the signature reads "9/19/2023."



*Id.* The second grievance is dated "8/18/2023" with an incident date of "8/14/2023" and also has no grievance number:



6

*Id.* at 2.  There is an illegible signature appearing to start with a "J" at the bottom, and the date box next to the signature reads "9/17/2023."  *Id.*

*Id.*

In his summary judgment motion, Officer Gaskin argued that these documents were falsified.  Dkt. 37 at 7–8.  Mr. Hall responded that a "couple of days" after he was released from segregation, he was at the Plainfield law library.  Dkt. 39 at 2.  Mr. Jones approached him "with the two unfinished grievances that [he] filled out."  *Id.*  Mr. Hall "had not completed the relief section and Mr. Jones gave both of the documents [to him] to finish and told [him] 'to slide them under his [Mr. Jones's] door'" when they were completed. *Id.*  Mr. Hall completed the forms and intended to turn them in to Mr. Jones's office, but by the time he completed the documents and was able to get to the office, "Mr. Jones had found employment elsewhere."  *Id.*  During the next several months, he forwarded grievances to "whoever was in charge of this department and requested someone to answer these requests," but none of those grievances ever "made it back to [him] in any form."  *Id.*  Also, after his lawsuit was filed, he received a conduct report and was found guilty of forgery

7

for falsifying the grievances at issue in this lawsuit, which he characterized as "obvious retaliation" for filing this lawsuit. *Id.* at 3.

Mr. Hall later amended his response, stating under penalty of perjury that after he was released from segregation, he filled out several grievances that were never answered. Dkt. 49 at 1. He also wrote three letters to Plainfield's warden and spoke with multiple correctional officers. *Id.* The grievance officer at the time was Mr. Foster, who admitted that he was overwhelmed and needed to catch up on his work. *Id.* During this same time frame, Mr. Hall gave Mr. Foster two filled-out grievances, and Mr. Foster said that he would handle them. *Id.* Those grievances were never processed. *Id.* Mr. Hall then spoke with Mr. Jones, who "was hired to 'clean up'" Mr. Foster's "lackluster job as a grievance specialist." *Id.* Mr. Jones then handed Mr. Hall "two of the grievances that were not finished and told [Mr. Hall] to 'complete the forms and get them back to [him].'" *Id.* But before Mr. Hall could forward the completed grievances, Mr. Jones resigned his position at Plainfield. *Id.* That left Mr. Hall with grievances "signed by Jeremy Jones (initials J.J.)" but without grievance numbers, so he sent them "to the court in the state that the document was in." *Id.* He explained again that he was disciplined at his facility for forging those grievances. *Id.*

### 2. Officer Gaskins's Evidence

To support his allegation that Mr. Hall falsified the grievances he submitted to the Court, Officer Gaskins relies on a declaration under penalty of perjury from Plainfield's current grievance specialist, Amber Miller. Ms. Miller

8

states that Plainfield has no record of the grievances Mr. Hall filed with the Court. Dkt. 36-1 ¶ 54. Ms. Miller succeeded Mr. Jones as the grievance specialist at Plainfield on September 18, 2023. *Id.* ¶ 49. Grievance specialists do not sign grievances unless they have been accepted and assigned a grievance number. *Id.* ¶ 50. The grievances Mr. Hall filed with the Court do not have grievance numbers on them, so they would not have been signed by a grievance specialist. *Id.* ¶ 51.

Ms. Miller also provided sample signatures from Mr. Jones, stating that the signatures on Mr. Hall's grievances do not match:





9

Dkt. 37 at 7 (citing dkt. 36-4 and dkt. 29-2).

Officer Gaskins has also submitted evidence of Mr. Hall's discipline for forging these grievances:

| Decision | Reason for decision | Continuance requested |
|---|---|---|
| Guilty | DHB finds Guilty of forging documents due to Staff Reports with supporting document with Original Grievance, Staff Witness Statement stating again that Grievance does not return a paper with no case number on the upper right-hand corner. I.I. Hall in his hearing begins to struggler to explain if he put the date on the document. Upon reviewing the two grievances filed for 8/14/2023 are signed to different dates on 9/17/2023 and 9/19/2023 comparing them to the signatures on the 08/10/2023,08/16/2023. On 9/17/2023 specifically can tell a huge different and this is the one Ms. Miller is referring to with no grievance number on it into the top right corner. I.I. Hall could now fully remember and started giving excuses he had a brain tumor and can't remember back that far. I overheard him talking about the incident and how the department was running back then, and he could remember those details but not this incident. I.I. Hall is found to factually to not be telling the truth and forged the signature on 9/17/2023. The Signature is written in his handwriting and the signature is not even close to other documents signed by former grievance specialist Jermery Jones. The Hook on the J and the space of the letter J is simply discovered on the forged signature a I.I. Hall did not space anything and can not even tell if it's a J or not. | No |

Dkt. 42-1.

## III.
## Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

10

"Because exhaustion is an affirmative defense," Officer Gaskins faces the burden of establishing that "an administrative remedy was available and that [Mr. Hall] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). As a result, "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, or 3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

If grievance policy language is ambiguous, or if grievance provisions are vague or confusing, any ambiguity is resolved in favor of the prisoner, because the burden of proof rests with the defendants to show an administrative process was available. *Miles v. Anton*, 42 F.4th 777, 781–82 (7th Cir. 2022). Similarly, the administrative process can be unavailable if a prison's response to a grievance "so obscure[s] the administrative process" that it becomes "unknowable." *Reid*, 963 F.3d at 331.

Mr. Hall does not dispute that he never fully exhausted all three steps of the grievance process. *See* dkt. 49 at 1. Instead, he argues that he completed the only steps available to him since Mr. Jones left him with signed but

11

incomplete grievances that he filed with the Court. *Id.* Officer Gaskins contends that he's entitled to summary judgment because the grievances are falsified, particularly because:

    (1) one of the grievances was allegedly signed by Mr. Jones on September 17, 2023, which was a Sunday when he would not have been working;

    (2) the other grievance was allegedly signed by Mr. Jones on September 19, after he was no longer the grievance specialist at Plainfield;

    (3) the first grievance is dated 2024, suggesting that Mr. Hall created the document in 2024 and not at the time of the events at issue in 2023;

    (4) the signatures on the grievances Mr. Hall submitted do not match authentic signatures from Mr. Jones;

    (5) Mr. Hall was found guilty of forgery in a prison disciplinary proceeding for falsifying these documents; and

    (6) Mr. Hall's submissions include internal inconsistencies (for example, whether he talked to Mr. Foster or Mr. Jones first).

*See generally* dkts. 37, 41, 50.

Officer Gaskins also argues that, even if the documents aren't falsified, he is entitled to summary judgment because Mr. Hall did not notify the grievance specialist in writing of any grievances that are not responded to, as required; and did not appeal after hearing nothing about his grievances, as required. Dkt. 37 at 13.

As to whether the grievances are falsified, Mr. Hall has stated under penalty of perjury that the grievances he filed with the Court are in the form in which Mr. Jones returned them to him. Officer Gaskins has also designated evidence that Mr. Hall's evidence is falsified. Because this raises a dispute about Mr. Hall's credibility, it cannot be resolved at summary judgment. *See*

12

*Hernandez v. Lee*, 128 F.4th 866, 869 (7th Cir. 2025) ("If genuine factual disputes exist related to the availability of [administrative] remedies . . . the district court must hold an evidentiary hearing to resolve those disputes.").

Officer Gaskins next argues that he's entitled to summary judgment even if Mr. Hall's contested grievances are authentic, because Mr. Hall didn't inform the Grievance Specialist that he never got a response and didn't appeal after not receiving a response. Dkt. 37 at 12–13. Mr. Hall's sworn response, however, says that he did receive his grievances back from Mr. Jones as rejected. *See* dkt. 49 at 1 ("[Mr. Jones] handed me two of the grievances that were not finished and told me to complete the forms and get them back to [him]."). Mr. Hall says that he was then prevented from resubmitting those grievances as Mr. Jones instructed him because Mr. Jones resigned from working at the prison, leaving Mr. Hall with "two grievances without a case number or a response [but that were] signed by Jeremy Jones (initials J.J.)." *Id.* If that situation is true, Mr. Jones left Mr. Hall in a situation not contemplated in the Grievance Policy's requirements to notify the Grievance Specialist when a grievance was not returned and then to appeal if no response is provided. *See King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023); *Reid*, 962 F.3d at 330 (finding the grievance process unavailable because officials offered "conflicting messages" and "further obscured the next steps Mr. Reid was supposed to take" in order to exhaust).

In short, there are material questions of fact as to Officer Gaskins's exhaustion defense that the Court cannot resolve without a hearing. As a result, Officer Gaskins's summary judgment motion must be denied.

## IV.
## Further Proceedings

As discussed above, a *Pavey* hearing is required because Mr. Hall has provided evidence that the grievance process was unavailable to him. However, Officer Gaskins has submitted evidence that Mr. Hall submitted falsified documents and testimony to try to overcome the exhaustion defense. "By declaring under penalty of perjury" that his account is true, Mr. Hall "opened himself to serious consequences." *Henderson v. Aldana*, Appeal No. 23-2612, 2025 WL 722116 at *2 (7th Cir. Mar. 6, 2025). "Indeed his willingness to do so is why a *Pavey* hearing is necessary." *Id.* But Mr. Hall "should be aware that if the hearing establishes that he fabricated the exhibit" or any testimony, "he will be subject to sanctions for fraud on the court and to a possible referral for a perjury prosecution." *Id.*

Thus, if the Court finds that Mr. Hall knowingly submitted falsified documents to the Court, additional sanctions will be appropriate, including one or more of the following:

1. This case would be dismissed *with prejudice* (as opposed to without prejudice).

2. Mr. Hall would be subject to monetary fines.

3. Mr. Hall would be subject to a filing restriction wherein he would be banned from filing papers in any civil case in this District for up to two years from the date of this action *and* until he has paid all outstanding filing fees and fines owed to any federal court. The ban

> would not apply to appeals or habeas corpus cases. Mr. Hall would be able to move to have the restriction rescinded or modified after two years.

*See id.*; *see also Martin v. Redden*, 34 F.4th 564 (7th Cir. 2022) (per curiam) (affirming district court's dismissal of a case with prejudice and the imposition of filing ban where a plaintiff with a history of submitting falsified documents submitted falsified documents in response to a summary judgment motion on the topic of exhaustion (referring to district court decision in No. 3:18-cv-00595-JD-MGG (N.D. Ind.)); *Shelly v. Fischer*, No. 2:22-cv-00065-JMS-MG, 2024 WL 3417005 (S.D. Ind. June 13, 2024) (striking summary judgment filings, dismissing the case with prejudice, and imposing a 2-year filing ban where the plaintiff submitted falsified documents in response to summary judgment motions on the topic of exhaustion in two separate cases). The nature of sanctions imposed will depend on the evidence presented to the Court, but the Court mentions the possibility of monetary sanctions and a filing ban so that Mr. Hall has fair notice of the potential consequences of proceeding to a hearing.

Accordingly, it is **ORDERED** that, **by April 24, 2025**, Mr. Hall shall file a notice with the Court stating whether he wishes to: (1) proceed to a hearing, at which the Court will determine both whether he exhausted available administrative remedies and whether he should be sanctioned for submitting false statements to the Court; or (2) if he no longer believes that he can defeat Officer Gaskins's exhaustion defense, filed a motion to voluntarily dismiss this

15

action without prejudice under Federal Rule of Civil Procedure 41(a)(2). If Mr. Hall fails to respond as ordered, this matter will proceed to a hearing.

## V.
## Summary and Conclusion

In summary, Officer Gaskins's summary judgment motion, dkt. [36], is **denied**. Officer Gaskins's motion to strike surreply, dkt. [53], is **granted** because Mr. Hall's proposed surreply was filed more than three months after Officer Gaskins filed his reply and because it was unnecessary to determining whether a *Pavey* hearing is required. Mr. Hall has **through April 24, 2025** to file the notice described in Section IV. If he fails to respond as ordered, this matter will proceed to a hearing as set forth in Section IV.

**SO ORDERED.**

Date: 3/25/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MITCHELL P. HALL
881479
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Katherine A Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov

David Matthew Price
Office of the Indiana Attorney General
david.price@atg.in.gov